You've waited patiently, Mr. Curtis. Yes. Good afternoon, Your Honors. May it please the Court, Robert Curtis for the Appellant and Plaintiff Limoliner, and if I may have the Court's permission, I'd like to reserve two minutes for rebuttal at the end. Okay. Thank you. Essentially, this appeal at its most basic level comes down to a challenge of the adequacy of the trial court's damages award. The trial court did find that Dattco had breached its obligation to Limoliner to repair its vehicle, but when the court issued its damages award, it only awarded damages for a very small portion of the time. There's essentially three periods of time, and the trial court only awarded damages for one small period of time. It's our position that the court's failure to award damages for the other periods of time were clearly erroneous. In addition to that, however, there's also an issue under Massachusetts Chapter 93A, which would have potentially awarded multiple damages in this case for the defendant's breach. On that issue, the court held that 93A did not, or the regulation underlying the claim did not apply in this case as a matter of law, because it was a business-to-business case. Is that the only reason the 93A claim makes any difference, is the multiple damages? Well, multiple damages and attorney's fees, but I think those are significant reasons. So multiple damages plus attorney's fees. Right. Correct. Correct. So those are essentially the remedies under 93A, and our client was deprived of those. And you would need to establish what to get the multiple damages and the attorney's fees? A violation of 93A, which could come about in a few different ways. The way that we're addressing here is the regulation under the motor vehicle regulations, Section 5.05, would essentially provide a per se basis for liability under Chapter 93A, if that regulation is violated. So we have raised that claim in our complaint and presented evidence on it. The court declined to consider it, however, on the basis of its ruling that that regulation doesn't apply in business-to-business cases such as this. And in doing so, the court relied on the Knapp holding. And in Knapp, they looked at a different regulation, which was the Attorney General's, what they call the general regulation under 940CMR Chapter 3 and subsequent sections. And the court in that case held that the general regulation wasn't designed to protect business-to-business or wasn't designed to apply in business-to-business cases. It wasn't designed to protect plaintiffs who themselves were in business. In coming to that conclusion, Knapp looked at a couple of things. And our position is because it was a different regulation, it doesn't apply directly and squarely here, but it does provide us with a framework for you to then apply to the regulation here. So what Knapp looked at was, first of all, who the anticipated protected class was. And in that case, they looked at the language of the regulation. And in that regulation, the word consumer was used. There were some references to the word customer as well, but it was pretty clear that it was focusing on consumer. Now, those terms weren't defined anywhere in the Chapter 3 regulations, but consumer, if you apply the common usage, and I believe in our reply brief we cited a Massachusetts case that sort of explored the definition of what a consumer is. It's generally somebody who's involved for their personal use or something of that nature. So in that case, they held because of the language of the regulation, it applied only to consumers. They also looked at the context in the Knapp case. And one of the things they looked at was the promulgation history of the regulations under the general regulation. The general regulation was promulgated before Chapter 93A was amended to allow business or plaintiffs who were in business to have a cause of action under 93A. At the time the Chapter 3 regulations, the general regulations were promulgated, only consumer plaintiffs could take advantage of Chapter 93A. So therefore, when the regulation was promulgated, the Attorney General couldn't have contemplated it applying in the business-to-business context because that wasn't an option under Chapter 93 at the time. In our case, the regulations under the motor vehicle regulation, Chapter 5, they were promulgated four years after 93A was amended. So by the time the motor vehicle regulation was enacted, the Attorney General was aware that business plaintiffs could assert claims under Chapter 93A. So you've got the chronology and then you've got the use of the word customer instead of consumer and customer equals person and person can include the defendant. Correct. Do you have anything else other than that on that point? On the 93A point? No, I think you've got the second piece of the argument. I thought you briefly argued that the commercial vehicle part of the regulation also supported your conclusion that it must have been intended to apply to business. Oh, right, yeah. I mean, when Justice Cayetano was summarizing, I was incorporating in my mind at least the definitions as a whole, including who a customer is as well as what a motor vehicle is. And, you know, on that point, however, if the Attorney General did not intend for it to apply in the business-to-business context, it could have easily said a motor vehicle for purposes of this regulation is a personal motor car or something. They could have limited it. And they didn't. They adopted the full definition of what a motor vehicle is under, you know, Chapter 90. So that includes everything. And to include everything, it has to include businesses. So I think, ultimately, if you apply the framework of NAP to the regulation at issue in this case, you'll see that this regulation does apply under Chapter 93A in business-to-business cases. And it should have been applied here. So that was essentially an error of law that this Court would review de novo and could certainly reverse on that issue. The 93A violation was a failure to put in the initial what the word was that they would take care of the... Inverter. Inverter. Correct. Absolutely. And, I mean, that's right on point to the section we cited in the motor vehicle regulation that you have to put into writing all of the repairs. The judge found that the inverter was part of the contract, but it wasn't written down. How did that hurt anyone for it to be left off the list? Because didn't they concede that they should have put in the inverter and they couldn't and therefore tried to help you put it in? Well, you know, it's a question of fact. So, I mean, I think it should have probably been addressed below anyway. But I would argue since the inverter was the primary source of the breach because the inverter was never replaced that probably is what caused this problem or a big part of this problem to begin with the fact that it wasn't properly written down and dealt with right up front. The judge found that it was part of the contract the judge found that they didn't repair it therefore that was the breach. So it goes to the heart of where the breach was. So I think that does make it important in this case. If there are no other questions on the 93A issue I'd like to move on to some of the other damages concerns that we have. Essentially, like I said, there's three periods of time that you can break this claim down into. The first period of time looks at from May 31st when DOTCO first took possession of the liner until August 25th when DOTCO finally said we're done with the work, we've done everything we're going to do, you can come pick this up. That was a period of 86 days. In the complaint, Limo Liner alleged that the contract required expedited performance. In addressing that the judge held that there was no expedited performance required because Limo Liner didn't specify a date by which it wanted the vehicle returned. Now that doesn't necessarily mean that there was no expedited performance required. The judge made a finding that Limo Liner stated we want this back as soon as possible. And the case law says, including the case cited by the judge that the term as soon as possible means as soon as reasonably possible under the circumstances. Isn't this just a contract that's silent and therefore ambiguous and we have not a legal ruling but a factual ruling at the end of the trial resolving that ambiguity that they weren't late. But to get to that point to say that they weren't late the judge should have, under case law looked at what was reasonable under the circumstances. Isn't it clear that's what the judge was doing? Was looking at what was reasonable? What other... This is why we say it's clearly erroneous because in supposedly looking at what was reasonable under the circumstances and again the judge starts off by saying there was no expedited performance because no date was specified and that's not really correct to begin with anyway because the cases do say I think it was the Bushkin case that said when a contract is So the judge had to undertake this... But how would they know what was reasonable under the circumstances? You bring in a defective vehicle and they don't say at the time, by the way we need this for a reason nor do they say that at any time until almost at the end. They don't tell them that their other bus or their other limo was out of service or any of the facts which would make someone believe that reasonableness in this case is more than 6 or 8 weeks or whatever Well, you know we're obviously bound by the findings that the judge made in this case even though there was some evidence that these matters were communicated but even notwithstanding that the judge only focused on what limo liner did or did not do or say the judge didn't look at you know, I mean the numbers don't lie 62.2 hours was the judge's finding that was actually worked on this vehicle between May 31st and July 28th That's a period of 58 days When you've got a business operating 24-7 repairing vehicles you've got testimony that the job could have been a 40 hour job could be done in 1 week is that reasonable under the circumstances to you know, essentially be working a little over 1 hour a day on the vehicle and the judge doesn't address that The judge says in addition there is evidence that once some repairs were performed new problems were found that had to be addressed so why is that not reasonably understood as a finding that she considered it reasonable for them to have taken the time they took Because she still doesn't analyze or discuss or look at the amount of time that they had the vehicle in their possession though and that's a factor I mean, another factor is there was a finding that they promised the vehicle tomorrow several times that was finding number 24 I believe The judge made that finding Ultimately the court said there was no contract specified a date and so it looks like the court tried to think was it unreasonable here and for the reason Judge Barringer I mean you could say de novo in 93A I don't think you could say de novo here No, no Don't we just have fact finding We do but you still have the clearly erroneous standard which applies here and I realize that that's a high burden but high burden or not the judge seems to have omitted big pieces here Well I guess I'll turn it to you Are you saying that there was no finding or that there was a clearly erroneous finding Clearly, I apologize for stumbling over the word Yes, you know what I mean There was a finding on the issue that you think is central but they just clearly erred in the way they made it Correct, because it only looked at, you know one side of the equation and not the other side and really our position is that when you're determining what's reasonable I just want to understand, when you say that you mean they only looked at what's the one side they looked at Limo liners, axles What about the sentence I quoted you where they looked at those actions and new problems arose Isn't that the other side of the equation So that's a finding and I'm just wondering is that clearly erroneous in your view and why I think it is because and you're correct I mean it is looking at something that came up or maybe that's not on any side it's just sort of circumstances that happened in between somewhere but our issue is that there's no consideration of the amount of time spent working versus the amount of time that they had the vehicle there was no consideration of the fact that the judge found that they kept promising it tomorrow but they weren't delivering it tomorrow those things should have been addressed too and if you don't address those and you leave that out of the equation how can you say that the analysis was as thorough as it needs to be to make a fact finding Thank you Mr. Curtis Your Honor if I may Christopher Williams for the Appellee.co Your Honor I want to at least initially focus on the 93A issue here because the court did in fact rely on the only Massachusetts case on this topic at all the only SJC case But it was very different wasn't it it involved a regulation passed at a time before 7-11 But I don't think that's really the grounding of that case because if you look at the two regulations they are almost identical in fact the context is fundamentally different one's passed with section 11, one's passed without section 11, one uses consumer one says customer Well no that's actually not true as a matter of fact the NAB court said first off and I want to go back just jump back for a second I will address your question and that is the SJC and the Massachusetts courts have always treated section 11 claims differently than section 9 claims in fact the law with respect to section 11 claims is that in order to be a violation it has to shock the conscience of someone inured to the rough and tumble world of business so there's always been a different outlook on section 11 claims than there have been on section 9 claims Just to make sure I understand that is that with respect to a general warranty violation or is that with respect to any because one thing that's odd here is NAB focuses on a general warranty claim and I can understand the argument that we don't want to transform all ordinary business contracts into 93A claims. The regulation here is not containing a provision said to be violated which is about a general breach of warranty. It's a particularized regulatory judgment about a particular context which is motor vehicle repairs. Correct. That seems to me a very different context than the NAB language where they're concerned about transforming every contractual violation. This seems to be a situation in which the AG has decided there's a particular problem in this industry and I want particular prophylactic rules in place to protect people in this situation. So what does NAB have to do with how we should think about that kind of regulation? NAB says that you have to look at the regulation itself and see what it's designed to protect and in fact NAB they say that in drafting the regulation the Attorney General's intent was to protect consumers against unfair or deceptive acts or practices in connection with shoddy repairs, inadequate and misleading service contracts and the grants of worthless warranties. So they went beyond the issue of just the warranty of what you were talking about. They talked specifically about shoddy repairs and inadequate and misleading service contracts. That's exactly what Section 5 is about. And the point is in terms of, I think it was a little misleading before in that NAB said that the regulation used the terms consumer and customer interchangeably. Now the subsequent regulation uses only the term customer. But the fact is that each have an identical definition of person, which is the only thing a customer or consumer can be, is a person. They have identical definitions as to the word person in both the regulation 940 CMR 3 and 940 CMR 5.05. Same exact. So I think if you start to look at it, you see things, and I brought up in my brief one particular issue to show that the AG intended this to be something for consumers because there's a specific section that talks about the waiver that one can get. And in fact it has to be in this form. And in fact in Section 3D of 5.05 it talks, it says I understand that I have the right to know before authorizing any repairs what the repairs to my car will be. And goes on to speak like that. What we're saying is that's an indication on the part of the AG's office that they intend this to apply to consumer transactions. Because again, there is nothing in the commentators that are talked about both in the NAB case and in the Baker case say that unless and until the AG says specifically this is going to apply to a Section 11 claim, these aren't going to apply. In fact, suggestion is that none of these are going to apply. Was the AG given notice of this lawsuit? They were not. It's been 20 years since that was decided, however. And they haven't amended anything in the regulation. So there's no suggestion or request for an amicus brief from the AG? No, not in this case. And was there any discussion of certification of the state law issued? No. Not until it was raised in the brief by the appellate. You're right, I'm sorry. Yeah, I unless I'm mistaken, does the definition of customer include a corporation, an institution? Well, the definition of person includes all of those things. That's a very, very broad definition. It is. And you really seem to be saying that if I'm a commercial enterprise, none of this applies. If I bring in my truck, let's assume it's my personal truck, and I use it incidentally to haul firewood, and I sell some of the firewood to my neighbors, and I bring the truck in for repair, and this happens, is that not covered because I use the truck incidentally to supply neighbors with firewood for which I charge? On the other hand, if I gave it to the neighbors, it would seem that it would be covered. Or if I just use it to drive to work because I like trucks. I understand what you're getting at, Your Honor. And my thought is that if the court were faced with that, they would have to undergo an entire analysis as to whether you are in the business of doing that. And if you're not in the business of doing that, which I'm not sure helping out neighbors, even though you charge them for them, would necessarily put you in the business of doing that. So I don't think it would technically be a business-to-business Section 11 claim. Let's assume I'm a band leader, and I have a band, and I put the band in a bus which I have bought, and I travel the bus around the country from gig to gig, and the bus breaks down at some point, and I bring it in for a repair in Massachusetts. It's not covered. I would think it would depend on how you own the bus, and how the bus is used. My mother owns it, and she lets me use it. I'm not sure, because you have to get into an analysis first as to whether you are in the business of doing something. I'm in the business of being a band leader, and I transport my band by a bus which I own. Which you own. I would suggest that maybe if the band owned the bus, or if the band were incorporated and owned the bus, or a corporation or some form of business entity owned the bus, you might be in a better position to argue it's a Section 11 claim. This just follows from NAP on your theory. This inquiry is something that NAP requires us to engage in if NAP controls, and certainly controls for some cases, just issues in this one. With respect to this one, does the motor vehicle definition bear at all on whether we should think the Attorney General really meant only personal car owners when she included seemingly obvious commercial vehicles in the list of motor vehicles? Why not? I don't think so, because the actual definition is citing to Section 1 of Chapter 90, which basically says any powered vehicle, it doesn't say buses, it doesn't say it excludes bicycles, and it goes on and excludes other types of vehicles, but it just says propelled by power. That's all it says. Can I go back to my question? If Governor Baker decides he's able to do it, he's going to outsource the repairing of all the buses. And he gives it to a handy dandy repair place and says, we can do this in America, we're good at it. And they do neither. That's not covered either, unless he has a contract which gives him some rights. No. I guess the first step you have to consider, though, is is it a Section 11 claim or is it a Section 9 claim? And if it's a Section 11 claim, then I would say no. According to NAP, in no situation is this regulation in NAP, and I'm arguing, is this regulation here, is it applicable to Section 11 claims? And it all stems from the fact, the way we treat Section 11 claims differently than we do Section 9 claims. And I understand you're getting into the finer points of where those cross, exactly. But I guess what I'm saying, in this particular situation, you have two bus companies that are of equal bargaining power. You don't have the guy that's the band leader that's driving the bus for his band and bringing people around the country. What you have is you have two well-established bus companies that are negotiating on an even level. I don't think anybody disagrees with that. So that this is clearly a Section 11 claim under 93A. And again, I point to the things in NAP that talk about, this is, yeah, okay, it was, it did come about before Section 11. But the commentators since then that are cited in NAP and are cited in Goldman, all say they're not supposed to apply to Section 11 claims at all unless and until the AG's office says this applies to Section 11 claims. And there's no such thing here. Is there other regs out there that would be implicated by a decision in this case? Are there other Attorney General regs that use the word customer or some other term that could be literally read? And this case will set off a campaign reaction. I don't think so. Only because it's been 20 years since NAP was decided. And there have been zero cases in the Commonwealth since then on any of these issues. And the AG's office has not gone back and amended, which they could very easily do, once they knew the SJC's decision back in 1994. They've had 21 years to go back and amend even 940 CMR 3. Doesn't that cut against you potentially? Unless it's plausible to think that they never intended to pass any regulation that would trigger Section 11. You might think they realized that after Section 11 was passed, it would just be understood NAP wouldn't apply to any of the regs. Is there any reg that refers specifically to Section 11? No. Not that I'm aware of. Does that mean, so your position is there's just not a single reg that's ever implemented Section 11? My position is that... Does that follow from your position? I'm not necessarily positive about every other reg, Your Honor. I've researched this one and the one that's cited in NAP. And I've looked at a couple others just based on my practice. And I have not yet seen one that specifically implicates Section 11. But then again, they are the types of things like this, which appear to be consumer-oriented. Again, I don't see anything in the definitions that changes that. Like I say, the definition in Section 3 in 940 CMR 3.01 is the same definition of person which was before Section 11 is the same definition that's in Section 5.01. If this section does apply to business-to-business deals, if we were to hold that, what's your position on whether a violation of this section is a per se violation of Section 11? Would that follow? If you lost your basic point, do you then lose the per se point? No, I don't think it does become it because I think you go back to the predisposition on the part of the Commonwealth to look for something significantly more than just well, first off, even in Section 9 claims, a simple breach of contract is generally not a violation of 93. In Section 9, I'd understood that a violation of the Attorney General's reg is per se a Section 9 violation. Is that little extra that you need? Right, and I'm saying that it doesn't apply in Section 11. And what tells us that? Section 11 requires something extra other than a breach of a commercial contract. Oh, there's case law. And what is it that tells us that a violation of a reg, if the reg is applicable, would not provide that added benefit? I don't know of any case law that talks about that, Your Honor. That's the whole thing. Because there have not been any decisions on that issue. And again, Court of Law never reached any of those issues because it just said as a legal matter it doesn't apply in Section 11 claims based on the reasoning in Knapp. And the reasoning in Knapp and in the Goldman Sachs Did you address just the factual finding that we were talking about before? As I understood the argument against you, it's that there is this sentence that purports to be saying something about the reasonableness of the time it took. But that a number of the considerations that one would expect one to consider in order to make an actual finding that it was reasonable to take that long simply were never made just reading the face of the opinion and therefore, I take it the argument is, therefore that finding the little bit that they addressed the issue is not enough to make it a finding that can withstand even deferential clear error review. Could you just respond to that? Well, sure. I think that there are other findings made, and there were plenty of facts that came out at trial, that and again, I think somebody cited to one of them, which I think was you, Your Honor that said that every time we thought we had it ready, something else would come up. Don't forget, I mean this was a dead vehicle, hadn't been on the road for a year, and it was brought to us we said, yeah, we probably should have never said we can fix it, but we said, yeah, we can try to fix it. We gave them a list. The list had dozens of issues on it, and so the judge said, you know, okay, and there was testimony that every time we thought we had it ready something else would come up. It took us several weeks just to get the vehicle to start and run consistently. So, there is evidence. I think there is plenty of evidence to show that we tried to do things every time we called. In fact, they agreed. The testimony from one of their general managers at the time was, yeah, every time they told me that it would be ready they didn't call and say something else has come up. So, I think we prosecuted it diligently. The other thing that I want to point out too is Thank you. Thank you once again. Just on that last point, one additional point that occurred to me as I was sitting there, while there was that finding that new problems continued to come up, it still doesn't address the fact that only 62.2 hours were spent during 58 days. If new problems kept coming up, why wasn't more time being spent? Where's the consideration of whether that's reasonable or not? So, yeah, more problems kept coming up, but you still only spent a total of 62.2 hours during this entire 58 days. So, I think that raises the question. That's all I want to say about that, because I have several other points on the 93A. First of all, the trial counsel for Lemeliner did contact the AG's office to find out if they wanted, I know this is beyond the record, so I don't want to go too far, but did contact them about whether they wanted to do an amicus brief in this case. They ultimately declined to do so. But that's all. I just wanted to let you know that that was addressed. As far as certification, I don't know that that's certainly wasn't done at the lower court level. I don't know that it needs to be done here, because I do think NAP gives us the framework that certainly gives you enough legal authority to decide whether this regulation would fall under Section 11 or not. But of course, and I had mentioned it in a footnote sort of informally, if the court doesn't believe that it has the authority to make that ruling, we'd certainly request that a request for certification be made to the SJC. On the issue of whether you would actually have any kind of effect of a per se violation under this regulation, I think the answer is yes, because if you look at Subsection 2, and I'm reading from it, it says it is an unfair or deceptive act or practice for a repair shop to, and then it goes on with the subsections under there, which include the failure to record part of the project. Thank you.